UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. VAUGHN,<br><br>        Plaintiff,<br><br>    v.<br><br>TERAN,<br><br>        Defendant. | Case No.: 1:17-cv-00966-DAD-JLT<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY<br><br>(Doc. 35) |

Defendant is a nurse employed by the California Department of Corrections and Rehabilitation. Plaintiff alleges that on August 5, 2015, Defendant provided Plaintiff a bleach product, with full knowledge that dispensing bleach in the circumstances exposed Plaintiff to a substantial risk of serious harm that the bleach would be inhaled causing significant damage to his lungs. Plaintiff states that he now suffers with a form of chronic obstructive pulmonary disorder, requires supplemental oxygen, and is permanently disabled.

On December 4, 2019, Plaintiff filed a motion to compel discovery, including a joint statement regarding discovery disagreement. (Doc. 35.) For the reasons set forth below, Plaintiff's motion to compel discovery is **GRANTED IN PART**.

**I.    Plaintiff's Motion to Compel Discovery**

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" when "a party fails to answer an interrogatory

1

submitted under Rule 33; or . . . a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

## A. Scope of Discovery and Requests

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. The scope of discovery of a Rule 45 subpoena is the same as with a production request under Rule 34, which is guided by Rule 26. Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things…For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### 1. Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is

whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, , 2009 WL 3303718 (E.D. Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 WL 569370 at *2 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

2.  Request to Compel Testimony

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, "[a] party may, by oral questions, depose any person, including a party, without leave of court" by serving proper notice. The Court is

authorized to issue sanctions for a party's failure to appear for a deposition under Rule 37(d), which provides in relevant part: "if a party... fails, after being served with proper notice, to appear for that person's deposition… [s]sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(iv)." Such orders include directing the striking pleadings, issuing terminating sanctions, or other "just orders." Fed. R. Civ. P. 37(b)(2)(A)

### 3. Subpoenas for Deposition

Under Rule 45 of the Federal Rules of Civil Procedure, a subpoena may be issued requiring a nonparty to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). In addition, any party may serve a subpoena that commands a non-party "to produce documents, electronically stored information, or tangible things . . ." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas are subject to the relevance requirements of Rule 26(b), and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Once a nonparty has been properly served with a Rule 45 subpoena, the nonparty "may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Civil Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3)." *In re Plise*, 506 B.R. 870, 878 (2014) (citation omitted). If a nonparty serves a written objection to the subpoena, the party seeking the deposition must obtain a court order that directs the nonparty to comply with the subpoena. *Id.* (citations omitted). Even if a nonparty does not serve a written objection or move to quash, "the more prudent practice for the court is to issue such an order before entertaining a motion for contempt." *United States Sec. Exch. Comm'n. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) (citation omitted).

### B. Discussion and Analysis

Plaintiff alleges that the discovery at issue involves the following: (1) Subpoena to CDCR dated May 29, 2019; (2) Inspection Demand, Set Four, dated July 11, 2019 (Items 8-10); (3) Subpoena to CDCR dated September 13, 2019; (4) Deposition Subpoena to Edgar Clark, M.D., with witness fee; and (5) Notice of Deposition of Stewart Lonky, M.D., with documents demands.

///

1. Subpoena to CDCR dated May 29, 2019

The Subpoena dated May 29, 2019 requested the following:

Item No. 1:
All DOCUMENTS in their NATIVE FORM CONCERNING medical records, beginning August 1, 2015, to his discharge in December 2018, limited to the treatment of Mark Vaughn, former CDCR No.: T72743, only for the effect of inhalation of Dakin's solution occurring on or about August 5, 2015, including chemically induced asthma and/or chronic obstructive pulmonary disease, or any other diagnosis related to inhalation of Dakin's solution.

Item No. 2:
All DOCUMENTS in their NATIVE FORM CONCERNING all medical expenses paid by YOU for the treatment of Mark Vaughn, former CDCR No.: T72743, related to his pulmonary care beginning August 1, 2015, to his discharge in December 2018. The medical treatment expenses include, but are not limited to, those for emergency acute care, transportation, hospitalizations, treatment in clinical settings, physician consults, breathing treatments, medications, supplies, oxygen, and oxygen generators.

Item No. 3:
All DOCUMENTS in their NATIVE FORM CONCERNING inmate requests for medical services, including CDCR Form 7362s, submitted by Mark Vaughn, former CDCR No.: T72743, beginning August 1, 2015, to his discharge in December 2018.

According to Plaintiff, the subpoena dated May 29, 2019, was served on May 30, 2019, on CDCR. (Doc. 35-1 at 11.) Plaintiff reports that no response was served either stating an objection or stating that the documents would be produced. Id. Plaintiff asserts that objections have been waived as untimely. Id.

Defendant reports that counsel for Defendant was first made aware of this subpoena in November 2019. (Doc. 35-1 at 18.) According to Defendant, it was not served on counsel for Defendant, nor was it provided to counsel for Defendant until November 4, 2019. Id. Defendant also asserts that a proof of service has not been provided to Defense counsel as of November 26, 2019. Id. Defendant also contends that it appears that Plaintiff's counsel is in possession of all documents responsive to the subpoena. Id. Defendant states that if Plaintiff is only looking for a "formal response," Defense counsel will provide a response upon receipt of a proof of service of the subpoena. Id. Plaintiff replies that Plaintiff has produced evidence that service was performed on Linda Stark. (Doc. 35-1 at 18-19.)

### *a. Item No. 1*

Regarding Item No. 1, Defendant contends that Plaintiff's counsel has been provided all of Plaintiff's medical records from 2015 through Plaintiff's parole in 2018. (Doc. 35-1 at 19.)

1 | Defendant's position is that Plaintiff's treatment for the inhalation of Dakin's solution was concluded
2 | by August 13, 2018. Id. Plaintiff alleges that all of his subsequent treatment was related to the incident
3 | of August 5, 2015; thus, according to Defendant, there is a clear dispute as to which records relate to
4 | the incident of August 5, 2015. Id. Defendant contends that neither Defendant nor CDCR is in
5 | possession of any additional medical records, and that there is nothing left for CDCR to produce in
6 | response to Item No. 1. Id.

According to the Defendant, neither the Defendant nor CDCR is in possession of any additional medical records that have not yet been produced. To the extent there are additional medical records the Plaintiff seeks to obtain that he has not yet obtained, Plaintiff must make such a request to the appropriate providers. The obligation to request such additional medical records lies with the Plaintiff.

On the other hand, the CDCR is not a party to this case and the plaintiff has failed to demonstrate that he served notice of this motion and the motion on the CDCR. Thus, to the extent this motion seeks to compel the CDCR to act, the motion is **DENIED**. Consequently, Plaintiff's request to compel response to Item No. 1 of Subpoena to CDCR dated May 29, 2019 is **DENIED**.

### *b.     Item No. 2*

Regarding Item No. 2, Defendant reports that Plaintiff's counsel has made a similar request in the form of a request for production of documents on Defendant. (Doc. 35-1 at 20.) According to Defendant, Plaintiff's counsel has been advised that CDCR does not keep records of the costs associated with medical services or supplies provided to the inmates by CDCR, and records are kept of the billing records associated with medical care provided by outside medical providers. Id. Defendant reports that these records were initially produced on a CD with the response to September 13, 2019 subpoena. Id. Defendant states that in November of 2019, Plaintiff's counsel suggested that he had not received the billing records, so Defense counsel sent another copy of the records by e-mail on November 13, 2019. Id. Defendant therefore contends that all of the billing records have been produced, and there is nothing left for CDCR to produce in response to Item No. 2. Id.

Plaintiff argues that a response to a subpoena does not comply with Federal Rules of Civil Procedure Rule 45 when it first appears in opposition to a motion to compel. (Doc. 35-1 at 21.)

1 | According to Plaintiff, after Plaintiff originally served the demand, the response was that a diligent
2 | search was conducted and no such records existed. Id. Plaintiff reports that on May 13, 2019, Plaintiff
3 | disputed the claim and asked for an additional effort to locate the records. Id. According to Plaintiff, in
4 | response, Defense counsel stated that the diligent search was limited to asking a litigation coordinator.
5 | Id. Plaintiff states that by May 29, 2019, Plaintiff's counsel gave notice that a motion to compel would
6 | be filed over this issue. Id. Plaintiff reports that Defense counsel claimed that the Inspection Demand
7 | was not enforceable due to service issues in spite of counsel's offers, reassurances, and
8 | acknowledgements otherwise. Id. According to Plaintiff, the next day, Plaintiff served this subpoena,
9 | and the day after, May 31, 2019, Defense counsel stated that, in fact, billing records did exist, and that
10 | they would be served by e-mail the next week. Id. Plaintiff reports that Defense counsel then
11 | represented that the records were being mailed on a CD, however, neither the records nor the CD were
12 | provided. Id. According to Plaintiff, on November 7, 2019, after numerous threats that a motion to
13 | compel would be filed, Plaintiff e-mailed notice to Defense counsel that this motion would be drafted,
14 | and that any responses served after that date would be considered as produced to avoid a Court order.
15 | Id. Plaintiff reports that on November 13, 2019, Defense counsel e-mailed the billing records
16 | requested on April 1, 2019.

According to the parties, it appears that Defendant has produced all of the billing records to Plaintiff. Defendant contends there is nothing left for CDCR to produce in response to this request. Accordingly, because Plaintiff has received the requested documents, Plaintiff's request to compel response to Item No. 2 of Subpoena to CDCR dated May 29, 2019 is **DENIED**.

      *c.*    *Item No. 3*

Regarding Item No. 3, Defendant alleges that Plaintiff's requests for medical services are all included in Plaintiff's medical records, and Plaintiff's counsel is in possession of all of Plaintiff's medical records from 2015 through Plaintiff's parole in 2018. (Doc. 35-1 at 22.) Thus, Defendant contends, there is nothing left for CDCR to produce in response to Item No. 3. Id. Plaintiff again argues that a response to a subpoena does not comply with Federal Rules of Civil Procedure Rule 45 when it first appears in opposition to a motion to compel. Id.

It appears that Defendant has produced the documents responsive to Item No. 3. According to

Defendant, there is nothing left for CDCR to produce in response to Item No. 3. Thus, Plaintiff's request to compel response to Item No. 3 of Subpoena to CDCR dated May 29, 2019 is **DENIED**.

    2.    <u>Inspection Demand, Set Four, dated July 11, 2019 (Items 8-10)</u>

The Inspection Demand, Set Four, dated July 11, 2019 (Items 8-10) requested the following:

<u>Inspection Demand No. 8</u>: "CONCERNING" means relating to, demonstrating, supporting, proving, elaborating, corroborating or completing. All DOCUMENTS CONCERNING the placement of Plaintiff in a medical clinical setting, including Correctional Treatment Centers and Outpatient Housing Units, by any CDCR unit, department, or employee, including the Health Care Placement Oversight Program (HCPOP) and/or similar entity by any other name that manages the allocation of CDCR health care resources.

<u>Response</u>: Responding Party objects to this request on the grounds that it is vague and ambiguous. Responding Party does not know what Plaintiff means by "placement of Plaintiff in a medical clinical setting." Subject to and without waiving said objection, Responding Party responds as follows: Based upon Plaintiffs definition of the term "CONCERNING," all of Plaintiffs medical records "concern" Plaintiff's placement in a medical clinical setting. Responding Party is not in possession of any additional records which might be produced in this regard.

<u>Inspection Demand No. 9</u>: All DOCUMENTS CONCERNING the review of the Medical Error Report CONCERNING the delivery of medical supplies by Defendant to Plaintiff as alleged in this lawsuit, including the Supervisory File for Defendant, all Form 1123, all letters of instruction, and all adverse actions as described by Laura Schaper at her deposition in this case.

<u>Inspection Demand No. 10</u>: All DOCUMENTS CONCERNING Defendant's training file.

According to Defendant, with regard to Inspection Demand, Set Four, the parties dispute which version of the demand was served. (Doc. 35-1 at 22.) Defense counsel received the Document Demand which includes Inspection Demand Nos. 6-8 from Deputy Attorney General John Bridges who attended the depositions in July of 2019. (Doc. 35-1 at 22-23.) Defendant reports that is the only version provided to Defense counsel at that time. (Doc. 35-1 at 23.) According to Mr. Bridges, that is the last version that was provided to him. <u>Id</u>. Defendant states that he served responses on August 9, 2019. <u>Id</u>. According to Defendant, more than three weeks later, on Saturday, August 31, Plaintiff's counsel sent the version with Inspection Demands 9 and 10 by e-mail. <u>Id</u>. Defendant reports that was the first time Defense counsel saw Inspection Demands 9 and 10. <u>Id</u>. Plaintiff contends that it does not matter whether Defense counsel ever saw Items 9 and 10, and states that they were served and Mr. Bridges mishandled them. <u>Id</u>. Plaintiff reports that Plaintiff's counsel provided an e-mail thread from the court reporter's office making clear that Inspection Demand Set Four, Items 6 through 10, were

printed at the office. Id. Plaintiff states that a proof of personal service was delivered to Defense counsel. Id.

### a. Item No. 8

Item 8 requested health care utilization records related to the placement of Plaintiff in a clinical setting for three months. According to Plaintiff, Defendant objected on the grounds that "placement of Plaintiff in a clinical setting" is vague and ambiguous without explaining how. (Doc. 35-1 at 12.) Plaintiff contends that Defendant's objection is boilerplate and without merit. Id. Plaintiff asserts that the substantive response is evasive and dissembling by claiming that all medical records "concern" placement in a clinical setting. Id. According to Defendant, Plaintiff's counsel is in possession of all of Plaintiff's medical records from 2015 through Plaintiff's parole in 2018, and Defense counsel is unable to determine what else Plaintiff's counsel is seeking. (Doc. 35-1 at 23.) Plaintiff replies that the request is not for medical records. (Doc. 35-1 at 24.)

It appears here that Defendant has provided Plaintiff with the medical records that would be responsive to this request. If the documents produced were not those that Plaintiff was seeking, he had the opportunity to clarify the request. The Court agrees with Defendant's contention that the request is vague and ambiguous, which is demonstrated by Plaintiff's reply here, only asserting that the request it not for medical records, but failing to provide any further clarification as to what exactly is being requested. Accordingly, Plaintiff's request to compel response to Inspection Demand, Set Four, Item No. 8 is **DENIED**.

### b. Item No. 9

Item 9 requested information about how CDCR reviewed Defendant's actions when she dispensed the wrong medication to Plaintiff. According to Plaintiff, no response was served either stating an objection or stating that the documents would be produced. (Doc. 35-1 at 12.) Plaintiff argues that objections have been waived as untimely. Id.

Defense counsel reports that he requested a copy of the records requested, including the Medical Error Report, letters of instruction, and the Supervisory File for Nurse Duran. (Doc. 35-1 at 24.) Defendant reports that the litigation coordinator sent Defense counsel a number of documents which were identified as the Supervisory File for Nurse Duran. Id. Defense counsel sent all of those

documents to Plaintiff's counsel. Id. Defense counsel contends that he specifically followed up with the litigation coordinator to inquire as to the existence of a Medical Error Report relating to the bleach exposure on August 5, 2015, and the litigation coordinator confirmed that they were unable to locate any such record. Id. Defendant states that it is the practice of attorneys with the Attorney General's Office to rely upon experienced litigation coordinators to navigate through institutional operations and work with institutional personnel to seek and produce records. (Doc. 35-1 at 24-25.) Defendant further describes that when a litigation coordinator advises counsel that there are no records, counsel will rely on such representations unless there is some additional information to suggest that responsive records do, in fact, exist. (Doc. 35-1 at 25.) Defense counsel states it is relying upon the representations of the litigation coordinator's determination that further responsive records do not exist. Id. Defense counsel reports that he specifically followed up with the litigation coordinator to inquire as to the existence of specific records sought by Plaintiff's counsel. Id. Defendant contends that there is nothing left for CDCR to produce. Id. Plaintiff replies that litigation coordinators are not the persons through whom to obtain these records, and they should be obtained directly from personnel administrators. Id.

The Court finds that Defendant's reliance on the representation of the litigation coordinator is a normal practice and is reasonable. The CDCR is an entity and can only act through its employees. After receiving documents from the litigation coordinator, Defense counsel also asserts that he followed up with the litigation coordinator regarding this specific request at issue, and the litigation coordinator confirmed that they were unable to locate any such record. Relying upon the representations of the litigation coordinator, Defense counsel has produced the responsive records that were obtained. Plaintiff claims that litigation coordinators are not the persons through whom to obtain these records, however, it is the Defendant's normal practice. Moreover, any responsive records that were obtained have been produced by the Defendant. Thus, Plaintiff's request to compel response to Inspection Demand, Set Four, Item No. 9 is **DENIED**.

        *c.*      *Item No. 10*

Item 10 requested Defendant's training file. According to Plaintiff, no response was served either stating an objection or stating that the documents would be produced. (Doc. 35-1 at 13.) Plaintiff again argues that objections have been waived as untimely. Id. Plaintiff asserts that

Defendant's training file includes documentation of how the medication error was addressed. Id.

Defense counsel states that he requested a copy of the Training File for Nurse Duran, the litigation coordinator sent Defense counsel a number of documents which were identified as the Training File for Nurse Duran, and Defense counsel sent all of those documents to Plaintiff's counsel. (Doc. 35-1 at 25.) Defendant contends that it is undisputed that CDCR policy required nurse Duran to check the labels of medications and supplies to ensure that the right medications were provided, and it is undisputed that Nurse Duran was aware of this policy. (Doc. 35-1 at 26.) Defendant argues that it is undisputed that Nurse Duran failed to comply with this policy on the occasion at issue. Id. Defendant states that it is not clear what additional policies or training records Plaintiff's counsel is seeking. Id. Plaintiff replies that Plaintiff raised legitimate questions about this production that Defendant has failed to address. Id.

Defendant states that he sent to Plaintiff all the documents that he received from the litigation coordinator which were identified as the Training File for Nurse Duran. As Defendant contends, it is not clear what additional policies or training records Plaintiff's counsel is seeking. There does not appear to be any reason to think that Defendant has not already produced all the responsive documents he has for this request. Therefore, Plaintiff's request to compel response to Inspection Demand, Set Four, Item No. 10 is **DENIED**.

3. Subpoena to CDCR dated September 13, 2019

The subpoena to CDCR dated September 13, 2019 includes Items 8 through 11. Items 8 through 10 are identical to Items 8 through 10 from Inspection Demand, Set Four, addressed above. (Doc. 35-1 at 26.) Item No. 11 requested the following:

> Item No. 11: All DOCUMENTS CONCERNING Operating Procedures (OP) at California State Prison - Corcoran.
>
> Response: CDCR objects to this request on the grounds that it is vague and ambiguous. CDCR does not know what Plaintiff means by "Operating Procedures." CDCR further objects to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. Operating Procedures at Corcoran State Prison are included within numerous manuals and sources, some of which are thousands of pages in length. The vast majority of any operating procedures are not related to the subject matter of this case in any way. Subject to and without waiving said objections, CDCR responds as follows: Relevant policies and procedures were produced at the deposition of Ms. Schaper.

11

Plaintiff contends that the response is evasive by referring to the Receiver's Inmate Medical Services Policies and Procedures. (Doc. 35-1 at 15.) Defendant asserts that CDCR objected to this request on the grounds that it is irrelevant, overly broad, and unduly burdensome. (Doc. 35-1 at 26.) Defendant reports that Operating Procedures at Corcoran State Prison are included within numerous manuals and sources, some of which are thousands of pages in length. Id. According to Defendant, the vast majority of any operating procedures are not related to the subject matter of this case in any way, and the relevant policies and procedures were produced and discussed at the deposition of Ms. Schaper. (Doc. 35-1 at 26-27.) In reply, Plaintiff states that Ms. Schaper made clear that each institution has local policies. (Doc. 35-1 at 27.)

The Court agrees with Defendant's objections regarding this request. The request appears to be overly broad, requesting the operating procedures at California State Prison, Corcoran, which Defendant reports includes numerous manuals and sources, some of which are thousands of pages in length. Additionally, Defendant states that the vast majority of any operating procedures are not related to the subject matter of this case. Defendant also reports that he has already produced the relevant polices and procedures. Accordingly, Plaintiff's request to compel Item No. 11 of the subpoena to CDCR dated September 13, 2019 is **DENIED**.

    4.    Deposition Subpoena to Edgar Clark, M.D., with witness fee

Plaintiff states that he served a subpoena on Dr. Edgar Clark to take his deposition on July 11, 2019 at 11:30 a.m. (Doc. 35-1 at 27.) According to Plaintiff's counsel, a witness fee of $41.00 was tendered with the subpoena. Id. On July 10, 2019 at 1:45 p.m., less than 24 hours before the deposition, Plaintiff's counsel sent an e-mail to Defense counsel indicating that the deposition of Dr. Clark was being cancelled. Id. On July 15, 2019, Plaintiff's counsel sent an e-mail to Defense counsel requesting that the check for the witness fee be returned. Id. Plaintiff argues that no obligation to incur a witness fee arose, and no reason justifies retaining the fee. (Doc. 35-1 at 15.)

Defendant asserts that Dr. Clark is not a party to this case nor was he represented by Defense counsel at a deposition. (Doc. 35-1 at 27.) Nonetheless, Defendant reports that in an effort to assist Plaintiff's counsel, Defense counsel e-mailed Dr. Clark to inquire as to the status of the check. Id. Dr. Clark indicated that he did not receive the check. Id. Defense counsel did not receive the check. Id.

Defense counsel reports that he does not have any additional information about the status of the check or whether it was cashed. (Doc. 35-1 at 28.) Plaintiff contends that Defense counsel represents CDCR. Id. Plaintiff states that a check was tendered to CDCR, and the check for the witness fee was deposited by CDCR. Id.

As stated, the witness fee of $41.00 was tendered with the subpoena served on Dr. Clark. Defendant clarifies that Dr. Clark is not a party to this case nor was he represented by Defense counsel at a deposition. The remedy here is with the witness. However, the plaintiff failed to give notice of this motion to Dr. Clark. The Court is not authorized to issue an order compelling Dr. Clark to return the witness fee without proper notice upon that person. Accordingly, Plaintiff's request that the Court order CDCR to reimburse Plaintiff for the fee is **DENIED**.

5. Notice of Deposition of Stewart Lonky, M.D., with documents demands

Plaintiff states that Items 10-13 were served on Defendant's expert witness, Dr. Lonky, without objection. (Doc. 35-1 at 15.) Plaintiff contends that no records were produced. Id. According to Plaintiff, Dr. Lonky testified at his deposition that he obtains expert witness cases through an agency named Exam Works. Id. Plaintiff states that with regard to Item 10, time spent, and Item 13, marketing, Dr. Lonky referred to Exam Works. Id. Plaintiff asserts that Item 11, list of prior cases, is required by Federal Rules of Civil Procedure 26(a)(2)(B)(v) as part of the expert designation process. (Doc. 35-1 at 15-16.) Plaintiff reports that the list was not provided when designated or at his deposition. (Doc. 35-1 at 16.) Plaintiff states that Item 12, record of income from expert work, is routinely requested from experts. Id. Plaintiff describes that the information allows a jury to consider income as a motive for testimony. Id.

According to Defendant, on October 28, 2019, Plaintiff's counsel e-mailed a copy of the Notice of Deposition of Dr. Lonky set for November 6, 2019. (Doc. 35-1 at 28.) On November 4, 2019, Defense counsel sent an e-mail to Plaintiff's counsel advising him of the contents of Dr. Lonky's file, and providing a copy of the documents that were not already in the possession of Plaintiff's counsel. Id. Defendant reports that these documents included Dr. Lonky's billing records and handwritten notes. Id. Defense counsel advised Plaintiff's counsel that he was already in possession of the remaining records in Dr. Lonky's file, including the medical records, CV, fee

schedule, and Dr. Lonky's report with supporting articles. Id. According to Defendant, Plaintiff's counsel did not reply to the e-mail or otherwise express dissatisfaction with the document production until Dr. Lonky's deposition on November 6, 2019. Id. Defendant reports that during Dr. Lonky's deposition on November 6, 2019, Plaintiff's counsel requested a copy of Dr. Lonky's list of prior cases. Id. Dr. Lonky testified that he was not currently in possession of such a list. Id. Defense counsel indicated that he would work with Dr. Lonky and ExamWorks to ensure that such a list is produced, and Defense counsel states he is currently working with Dr. Lonky to develop such a list. (Doc. 35-1 at 28-29.) According to Defendant, Dr. Lonky has produced his billing records associated with this case. (Doc. 35-1 at 29.) Defendant reports that Dr. Lonky is not in possession of a record documenting his income from expert work in the last ten years, and Dr. Lonky is not aware of any marketing materials associated with his expert services. Id. Plaintiff contends that the only way to obtain certain records in this case is to compel them, such as the production of billing records. Id. Plaintiff reports that it took seven months and this motion to obtain them, and Plaintiff cannot rely on Defense counsel's voluntary efforts. Id.

The disclosure of expert witnesses is governed by Rule 26(a) of the Federal Rules of Procedure. Parties must disclose the identity of each expert who will testify at trial. Fed. R. Civ. P. 26(a)(2)(A). When a witness is "retained or specially employed to provide expert testimony in the case" the disclosure requirements are as follows:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Expert reports eliminate unfair surprise and conserve resources. *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev. 1998) (citation omitted). The test under Rule 26(a)(2)(B) is "whether [the report is] sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Id.*

As Plaintiff cites, Rule 26(a)(2)(B)(v) of the Federal Rules of Procedure requires that a list of prior cases be disclosed as part of the expert reports. According to both parties, this list has not yet been disclosed. Accordingly, the Court **GRANTS** Plaintiff's motion to compel production of these expert reports.

## II.     Request for Sanctions

Pursuant to Rule 37, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Plaintiff contends that the Defendant failed to act in good faith. (Doc. 35-1 at 16.) Plaintiff reports that Defendant offered no excuse for a failure to provide a formal response to a subpoena served on CDCR, and instead CDCR offers its responses for the first time in opposition to this motion. Id. According to Plaintiff, Defendant refuses to acknowledge that records are being withheld, and some records were only produced after Plaintiff gave notice that this motion was being prepared. Id. Plaintiff seeks sanctions in the amount of $3,750. Id.

On the other hand, Defendant contends that Plaintiff's request for sanctions is not justified. (Doc. 35-1 at 29.) Defense counsel states that he has worked in good faith to locate and produce documents responsive to all of Plaintiff's requests and subpoenas. Id. Defendant argues that Plaintiff's requests have often been vague or overly broad. Id.

Defendant has shown his actions were substantially justified. It appears that, as Defense counsel alleges, he has worked in good faith to locate and produce documents responsive to Plaintiff's requests and subpoenas. Accordingly, the Court finds that an award of expenses would be unjust. Plaintiff's request for sanctions is **DENIED**.

## III.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion to compel (Doc. 35) is **DENIED** in all respects except as to the Notice of Deposition of Stewart Lonky, M.D., with documents demands.  As to this request, the motion is **GRANTED**; and

2. Plaintiff's request for sanctions is **DENIED**.

IT IS SO ORDERED.

Dated: **December 27, 2019**       **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE