1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK A. VAUGHN,                     No.  1:17-cv-00966-DAD-JLT

12              Plaintiff,

13         v.                            ORDER DENYING DEFENDANT'S
                                         MOTION FOR SUMMARY JUDGMENT
14   ERICA M. DURAN,
                                         (Doc. No. 38)
15              Defendant.

16

17         This matter is before the court on a motion for summary judgment brought on behalf of

18   defendant Erica M. Duran.[1]  (Doc. No. 38.)  The court reviewed the relevant briefing and deemed

19   the matter suitable for decision on the papers pursuant to Local Rule 230(g).  (Doc. No. 41.)  For

20   the reasons set forth below, the court will deny defendant's motion for summary judgment.

21                              **BACKGROUND**

22   **A.    Factual Background**

23         The facts that follow are undisputed unless otherwise noted.  In August of 2015, plaintiff

24   Mark A. Vaughn was incarcerated at California State Prison, Corcoran ("CSP").  (Doc. No. 40-1,

25   Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("PRF") at ¶ 1.)  Plaintiff has a medical

26

27   _____
     [1]  Both the docket and the filings submitted by both parties refer to defendant by the names Teran

28   or Duran.  At the time the incident in question occurred, defendant's surname was Teran.  (Doc.
     No. 40-2 at 21.)  It has since changed to Duran, which the court will use hereinafter.

                                           1

1   condition that requires him to breathe through a stoma in his trachea (i.e., a tracheostomy, an

2   opening in the neck that leads to the trachea, or windpipe).  (*Id.* at ¶¶ 2, 7.)  Because a

3   tracheostomy requires regular cleaning, CSP medical staff provided plaintiff with hydrogen

4   peroxide on a regular basis so he could self-clean his tracheostomy.  (*Id.* at ¶ 2.)

5        On August 5, 2015, plaintiff arrived at the prison clinic and requested the necessary

6   cleaning supplies.  (*Id.* at ¶ 3.)  Defendant Duran, a nurse at CSP, was assigned to dispense the

7   requisite supplies, supervise their use, and recover the remaining materials.  (*Id.*)  However,

8   defendant dispensed the wrong solution, giving plaintiff Dakin's Solution instead of hydrogen

9   peroxide.  (*Id.* at ¶ 4.)  Dakin's Solution, like hydrogen peroxide, is a clear, liquid antiseptic;

10  however, it contains chlorine bleach and is thus not appropriate for use inside the body.  (Doc.

11  Nos. 40 at 1; 40-2 at 94.)  The two solutions were stored next to each other in identically shaped,

12  sized, and colored containers, distinguishable only by their labels.  (PRF at ¶ 5; Doc. No. 38-2 at

13  8.)  When plaintiff applied the Dakin's Solution to his tracheostomy, he immediately began

14  experiencing a burning sensation and was later sent to Mercy Hospital in Bakersfield, California

15  for medical treatment.  (PRF at ¶¶ 7, 8.)

16       There is no dispute that defendant failed to read the label on the container of Dakin's

17  Solution before she handed it to plaintiff.  (*Id.* at ¶ 5.)  However, defendant claims that "she was

18  not aware that she was providing [plaintiff with] the wrong solution."  (Doc. No. 38 at 6–7.)

19  However, according to plaintiff, defendant Duran "consciously chose not to read the label on the

20  container."  (Doc. No. 40 at 2, 4.)  This dispute lies at the crux of the motion for summary

21  judgment now before the court.

22  **B.    Procedural Background**

23       Plaintiff commenced this action on July 19, 2017.  (Doc. No. 1.)  Plaintiff filed the

24  operative first amended complaint on October 3, 2017, alleging:  (1) a 42 U.S.C. § 1983 claim of

25  deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the

26  U.S. Constitution, and (2) a California state law negligence claim.  (Doc. No. 10.)  On January 23,

27  2020, defendant moved for summary judgment in her favor with respect to plaintiff's § 1983

28  /////

claim brought against her.  (Doc. No. 38.)  Plaintiff filed his opposition to the pending motion on February 18, 2020, and defendant replied on February 25, 2020.  (Doc. Nos. 40, 42.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Where, as here, a non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325).  If the moving party meets its initial burden, it shifts to the opposing party to establish that a genuine dispute over a material fact actually exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To meet their burden, the parties may not simply rest on their pleadings.  Rather, parties must cite to specific parts of the record to show whether there is a genuine dispute over a material fact.  *See* Fed. R. Civ. P. 56(c); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  A fact is material if it might affect the outcome of the suit under governing law, and the dispute, genuine if a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although the court takes undisputed facts as true and draws all inferences supported by the evidence in favor of the non-moving party, *see Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587 (citation omitted).  However, the non-moving party need not establish a material issue of fact conclusively in its favor.  It is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) ("[A]t this [summary

3

judgment] stage of the litigation, the judge does not weigh conflicting evidence with respect to a disputed material fact.  Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions.")  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  Likewise, "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

## ANALYSIS

Plaintiff's § 1983 claim alleges a violation of the Eighth Amendment on a theory of deliberate indifference to serious medical needs.  (Doc. No. 10 at 6–8.)  The test for a medical indifference claim is two-pronged:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

*Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Here, the parties do not dispute the first prong for the purposes of this motion; the only issue is whether defendant's actions were deliberately indifferent.  (*See* Doc. No. 38 at 5–7.)  Under that second prong:

> A prison official acts with deliberate indifference . . . only if the prison official knows of and disregards an excessive risk to inmate health and safety.   Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.   This subjective approach focuses only on what a defendant's mental attitude actually was.  Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

4

1    According to defendant, plaintiff's medical indifference claim must fail because he has

2    not produce any evidence in opposition to the pending motion for summary judgment to support

3    his claim that defendant was actually aware of the risk that plaintiff might suffer harm if she

4    failed to read the label on the container that she handed to him.  (Doc. No. 38 at 6.)  Though

5    defendant concedes that her actions "[a]t most[] can be characterized as an isolated occurrence of

6    neglect," she emphasizes that she "unintentionally" gave plaintiff Dakin's Solution, and that

7    negligence alone cannot support an Eighth Amendment claim under § 1983.  (Doc. No. 38 at 3,

8    6–7.)  *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("Thus, a complaint that a physician has

9    been negligent in diagnosing or treating a medical condition does not state a valid claim of

10   medical mistreatment under the Eighth Amendment."); *Schultz v. Leighton*, 325 F. Supp. 3d 1069,

11   1075 (N.D. Cal. 2017) ("A claim of medical malpractice or negligence is insufficient to make out

12   a violation of the Eighth Amendment."); *see also Bennett v. Dhaliwal*, 721 F. App'x 577, 579

13   (9th Cir. 2017) ("[E]ven gross negligence[] does not suffice.").[2]

14   In response, plaintiff disputes whether defendant acted "unintentionally" and argues that

15   defendant "consciously chose not to read the label on the container," even though she "had a duty

16   to be aware," "knew the importance of reading labels on medication,"[3] and "was aware that she

17   had not read the label on the container of Dakin's [Solution]."[4]  (Doc. No. 40 at 3; PRF at ¶¶ 4,

18   6.)  This, according to plaintiff, constitutes deliberate indifference to the harm posed to plaintiff

19   by defendant's failure to read the medication's label before dispensing it to him.  (Doc. No. 40 at

20   3.)  Based on the record before the court, the court is persuaded that there is a genuine dispute as

21

22   [2]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

23

24   [3]  Medical supplies such as hydrogen peroxide and Dakin's Solution are considered medication,
     though that is not necessarily consistent with colloquial usage of the term.  (Doc. No. 40-2 at 35.)

25

26   [4]  Plaintiff also theorizes that it is possible that defendant actually read the label on the container,
     saw that it was labeled Dakin's Solution, and nonetheless dispensed the solution to plaintiff,
     either intentionally or somehow still believing that it contained hydrogen peroxide.  (Doc. No. 40

27   at 2, 5.)  The court, however, will disregard this argument because it is contradicted by the
     undisputed fact that defendant did not read the label on the container of Dakin's Solution.  (Doc.

28   No. 40-1 at ¶ 5.)  *See Anthoine*, 605 F.3d at 745 (accepting undisputed facts as true).

5

1    to a material fact, precluding the entry of summary judgment.

2         First, contrary to defendant's assertion, plaintiff has come forward on summary judgment

3    with evidence supporting his claim that defendant knew of the risk of harm that could result from

4    failing to confirm that she was dispensing the correct medication.  For example, defendant

5    acknowledged at her deposition that there are "policies and procedures" that govern her job

6    performance as a nurse, chief among them the requirement to confirm that she is dispensing the

7    right medication, failure of which can result in physical harm to a patient and can be considered

8    "at risk and reckless behavior."  (Doc. No. 40-2 at 34–35, 39–43, 62–64.)  Defendant also

9    confirmed that she read and consulted these policies and procedures as they related to her practice

10   as a nurse at CSP.  (*Id.* at 62–64.)  She specifically admitted to having been instructed to read the

11   labels on medication before dispensing them to patients, and she affirmed that she did so in each

12   of the more than ten times that she dispensed hydrogen peroxide to plaintiff before the incident in

13   question.  (*Id.* at 77, 82, 83.)  Second, it is undisputed that defendant nonetheless failed to adhere

14   to her training and prior practices when she handed to plaintiff a bottle of Dakin's Solution

15   without first inspecting the bottle's label to confirm that it in fact contained hydrogen peroxide.

16   (PRF at ¶ 4.)

17        It is true that these facts alone, which suggest "[a]n *inadvertent* failure to provide adequate

18   medical care," do not support a medical indifference claim under § 1983 and the Eighth

19   Amendment.  *Wilhelm*, 680 F.3d at 1122.  However, plaintiff also points to evidence suggesting

20   that defendant chose not to read the label on the bottle that she gave him because she thought he

21   was a "burden" and "wast[e of] her time," as evidenced by her behavior towards him, which

22   became "a little shorter and a little more confrontational" as time went on.  (Doc. Nos. 40 at 2;

23   40-2 at 22.)  The cited evidence provides a motive, and the undisputed evidence on summary

24   judgment shows that defendant failed to adhere to proper medical procedures that she was aware

25   of and familiar with as a matter of both training and practice.  (*See* Doc. No. 40-2 at 34–35, 39–

26   43, 62–64, 77, 82, 83; PRF at ¶ 4.)  The evidence, taken as a whole and viewed in the light most

27   favorable to the non-moving party, *cf. Matsushita*, 475 U.S. at 587 (citation omitted); *see*

28   *Anthoine*, 605 F.3d at 745, is such that a rational finder of fact could draw the inference that

defendant acted with deliberate indifference to plaintiff's serious medical needs.  *See Colwell*, 763 F.3d at 1066 (deliberate indifference can be shown when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care" (citation omitted)); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").  Of course, a rational trier of fact could also reject this interpretation of the evidence and conclude that defendant merely made a mistake.  But this is a determination that a trier of fact must make.

For example, in *Jett v. Penner*, the Ninth Circuit reversed the district court's grant of summary judgment in favor of defendants because it "concluded that a trier of fact could find that the doctor was aware of the plaintiff's need for treatment and that the doctor's 'failure to see [the plaintiff] to ensure [administration of the prescribed treatment] was deliberate indifference to a serious medical condition.'"  *Wilhelm*, 680 F.3d at 1122–23 (citing *Jett*, 439 F.3d at 1097).  Though the instant case is not about a delay in providing medical treatment, as in *Wilhelm* or *Jett*, it is about the allegedly conscious failure to administer a prescribed treatment.  *See Wilhelm*, 680 F.3d at 1123; *Jett*, 439 F.3d at 1097.  In other words, a finder of fact could draw the inference based on the evidence presented by plaintiff that defendant was indifferent to whether she provided plaintiff the correct medication and that faced with multiple bottles of the same shape, size, and color, she ignored the labels and chose one without regard to its contents.  The result, intended or otherwise, was that plaintiff's lungs and respiratory system were exposed to a solution of liquid bleach, leading to hospitalization and exacerbation of his longtime respiratory issues.  (*See* Doc. No. 40-2 at 94–95.)

## CONCLUSION

Accordingly, defendant's motion for summary judgment (Doc. No. 38) is denied.

IT IS SO ORDERED.

Dated:  __June 18, 2020__

_____
UNITED STATES DISTRICT JUDGE