UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. VAUGHN,<br><br>          Plaintiff,<br><br>     v.<br><br>NURSE DURAN and TERAN,<br><br>          Defendants. | Case No. 1:17-cv-00966-NODJ-HBK<br><br>ORDER DIRECTING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING<br><br>(Doc. No. 99)<br><br>JANUARY 30, 2023 DEADLINE |

Pending before the Court is the Motion to Enforce Settlement Agreement, filed by Plaintiff's Counsel on May 17, 2023. (Doc. No. 99, "Motion"). As the Court advised the Parties at the telephonic status conference held on December 7, 2023, the Court intends to address the pending Motion by applying standard contract principles to the October 2022 Settlement Agreement resolving this litigation. As set forth below, the Court directs the Parties to submit supplemental briefing as to (1) whether the manner of payment of the settlement funds was a material term of the Settlement Agreement; (2) whether the Settlement Agreement is silent or ambiguous as to the manner of payment of the settlement funds, and if so; (3) what extrinsic evidence, if any, the Court should consider in supplying a missing term or interpreting the settlement agreement's language regarding payment of those funds.

**LEGAL STANDARD**

To guide the Parties in their briefing, the Court sets forth the basic principles it applies in

interpreting the Settlement Agreement.  Because the Settlement Agreement is explicitly governed by California law, (Doc. No. 100-1 at 4 ¶ 2), this Court applies California state law in interpreting the Agreement.

An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.  *Miller v. Fairchild Indus*., 797 F.2d 727, 733 (9th Cir. 1986); *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 and n. 62 (D.C.Cir.1982).  Each party agrees to "extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract."  *Village of Kaktovik*, 689 F.2d at 230; *Protective Closures Co. v. Clover Inds., Inc*., 394 F.2d 809, 812 (2d Cir. 1968).  Since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts.  *Vertex Distributing, Inc*., 689 F.2d at 892 (quoting *United States v. ITT Continental Baking Co*., 420 U.S. 223, 236–37 (1975)).  Furthermore, enforceability of these compromise agreements is favored in the law.

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties at the time of contracting.  Cal. Civ. Code § 1636; *Morey v. Vannucci*, 64 Cal.App.4th 904, 912 (1998).  A court must determine what the parties meant by the words used, in light of all the circumstances.  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*., 69 Cal.2d 33, 38 (1968) ("PG&E"); Cal. Civ. Code § 1638.

Contract language is ambiguous when it is susceptible to two or more reasonable constructions. E.*M.M.I. Inc. v. Zurich American Ins. Co*. 32 Cal.4th 465, 470 (2004) "'[W]here the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract.'")  *Frankel v. Board of Dental Examiners*, 46 Cal.App.4th 534, 544 (1996).

Contract law allows admission of extrinsic evidence "to resolve an ambiguity," even when the contract is an integrated agreement.  *WYDA Assocs. v. Merner*, 42 Cal.App.4th 1702, 1710 (1996); *see also* Cal. Code Civ. Proc § 1856(g); *Winet v. Price*, 4 Cal.App.4th 1159, 1165 (1992).  Extrinsic evidence may be offered both to explain an obviously ambiguous term and to reveal a latent ambiguity.  *Pac. Gas & E. Co. v. G.W. Thomas Drayage etc. Co*., 69 Cal.2d 33, 37 (1968);

*Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal.App.4th 906, 920 (2008).

"An agreement is not ambiguous merely because the parties (or judges) disagree about its meaning." *Abers v. Rounsavell*, 189 Cal.App.4th 348, 356 (2010). Rather, the determination of ambiguity involves two steps. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." *Winet*, 4 Cal.App.4th at 1165. If the contract is not "'reasonably susceptible' to the interpretation urged," then "the case is over." *S. Cal. Edison Co. v. Superior Court*, 37 Cal.App.4th 839, 847–48 (1995). But "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Winet*, 4 Cal.App.4th at 1165. Because extrinsic evidence must be "relevant to prove a meaning to which the language of the contract is reasonably susceptible," any extrinsic evidence must be tethered to specific contract language. *Alameda Cnty. Flood Control v. Dep't of Water Res.*, 213 Cal.App.4th 1163, 1188–89 (2013) (quoting *Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391 (2006)) (emphasis omitted).

Admissible extrinsic evidence includes: (1) the circumstances, under which the contract was made and the matter to which it relates (Cal. Civ. Code § 1647); (2) the parties' statements during negotiations and communicated intent (*Heston v. Farmers Ins. Group*, 160 Cal.App.3d 402, 412 (1984)); (3) the parties' "course of dealing" and "course of performance," including pre-dispute conduct (Cal. Code Civ. Proc. § 1856(c); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 393 (2008)); and (4) usage of trade (*Id.*; *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal.App.3d 442, 451 (1988) ("industry custom binds those engaged in the business even though there is no specific proof that the particular party to the litigation knew of the custom") (citation omitted)).

"Custom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract" *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn*. (1992) 4 Cal.App.4th 1538, 1560, or "to supply a missing term." *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc*. 205 Cal.App.3d 442, 451 (1988); *see also Varni Bros. Corp.*

3

1 *v. Wine World, Inc.*, 35 Cal.App.4th 880, 889 (1995) [" 'Usage or custom may be looked to, both
2 to explain the meaning of language and to imply terms . . . "].)  "Custom and usage may not[,
3 however,] be used to vary the terms of the contract."  *Horsemen's*, 4 Cal.App.4th at p. 1560.

4      The use of extrinsic evidence is limited.  First, a party's undisclosed intent or
5 understanding is not relevant.  *Founding Members of the Newport Beach Country Club v.*
6 *Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956 (2003); *Winet v. Price*, 4
7 Cal.App.4th 1159, 1166 (1992).

8      Second, extrinsic evidence and other rules of construction may be used to interpret the
9 words chosen, but not to add, subtract, or vary the words used in the written agreement.  *See*
10 *Wagner v. Columbia Pictures Indus., Inc.*, 146 Cal.App.4th 586, 592 (2007) (extrinsic evidence
11 not credible because "it does not explain the contract language, it contradicts it."); *Bionghi v.*
12 *Metro. Water Dist. of S. Cal.*, 70 Cal.App.4th 1358, 1364–65 (1999) (party cannot "smuggle
13 extrinsic evidence to add a term to an integrated contract"); *Appling v. State Farm Mut. Auto. Ins.*
14 *Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (extrinsic evidence cannot be used to graft on a "good
15 cause" requirement); *Levi Strauss & Co. v. Aetna Cas. & Surety Co.*, 184 Cal.App.3d 1479, 1486
16 (1986) ("[t]he court does not have the power to create for the parties a contract which they did not
17 make, and it cannot insert in the contract language which one of the parties now wishes were
18 there.") (citation omitted).

19      Third, a written agreement "supersedes all the negotiations or stipulations concerning its
20 matter which preceded or accompanied the execution of the instrument" (Cal. Civ. Code § 1625),
21 and those terms "may not be contradicted by evidence of any prior agreement or of a
22 contemporaneous oral agreement."  Cal. Code Civ. Proc. § 1856(a).

23      Fourth, the terms of a writing may be "explained or supplemented by extrinsic evidence of
24 consistent additional terms," but not if "the writing is intended also as a complete and exclusive
25 statement of the terms of the agreement."  Cal. Code Civ. Proc. § 1856(b).

26      ////
27      ////
28      ////

**QUESTIONS PRESENTED**

Considering the above principles, the Court directs the Parties to each brief the following questions:

1) Is the manner of paying Plaintiff the settlement funds a material term of the October 2022 Settlement Agreement?

2) Is the Settlement Agreement silent and/or ambiguous as to the manner of paying the stipulated settlement amount?

3) If so, what extrinsic evidence, including of the types noted above, is relevant to interpret any ambiguous terms or supply missing terms in the Settlement Agreement? The Parties are invited to attach or otherwise reference any relevant extrinsic evidence to their briefing.

Accordingly, it is **ORDERED:**

1. **No later than January 30, 2023**, Plaintiff is directed to file a brief responding to the questions set forth above.

2. Local Rule 230, as revised March 1, 2022, shall govern the filing of oppositions and replies.

Dated:   December 14, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE