UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK VAUGHN,<br><br>                Plaintiff,<br><br>    v.<br><br>NURSE TERAN,<br><br>                Defendant. | Case No. 1:17-cv-00966-HBK<br><br>ORDER GRANTING MOTION FOR JUDICIAL NOTICE<br><br>(Doc. No. 143)<br><br>ORDER GRANTING IN PART MOTION FOR DAMAGES AND DIRECTING CLERK OF COURT TO CLOSE THIS CASE<br><br>(Doc. No. 128-3) |

      On July 12, 2024, the Court granted Plaintiff's Motion to Enforcement the Settlement Agreement, deferring a ruling on the amount of any damages to be awarded. (*See* Doc. No. 125). Pursuant to the July 12, 2024 Order, Plaintiff submitted a Motion for Damages supported by various exhibits. (Doc. Nos. 128-3, 133, 134, 135, 136, 137, 138). Defendant filed a Response to Plaintiff's Motion (Doc. No. 142) along with a Request for Judicial Notice (Doc. No. 143), and Plaintiff filed a Reply (Doc. No. 144). For reasons set forth below, the Court grants the Request for Judicial Notice and grants in part Plaintiff's Motion for Damages.

**REQUEST FOR JUDICIAL NOTICE**

      Defendant filed a Request for Judicial Notice, asking the Court to either judicially notice certain court records or find that they are incorporated by reference. (Doc. No. 143 at 1).

Specifically, Defendant seeks to judicially notice the following records from two state court proceedings:

1. The Complaint in *Ken I. Karan v. Mark Vaughn*, Case No. 37-2023-0030549-CU-BC-CTL (Superior Court of California, San Diego County).

2. The Clerk's Judgment in *Ken I. Karan v. Mark Vaughn*, Case No. 37-2023-0030549-CU-BC-CTL (Superior Court of California, San Diego County).

3. The First Amended Complaint in *Ken I. Karan v. California Department of Corrections and Rehabilitation et al.*, Case No. 24CV000516 (California Superior Court, Sacramento County).

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of a pertinent law or regulations at any stage of the proceedings. *Id.*; *see also National Agricultural Chemicals Assn. v. Rominger*, 500 F.Supp. 465, 472 (E.D. Cal. 1980). The Court may take judicial notice on its own or at the request of any party. *Id.* 201(c).

Courts judicially notice other court proceedings "if those proceedings have a direct relation to the matters at issue." *United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). However, a court may not take judicial notice of findings of facts from another case. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006). The Court may take judicial notice on its own or at the request of any party, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

The above records reflect the separate court proceedings through which Plaintiff's Counsel Ken Karan has sought to recover his losses resulting from CDCR's breach of contract and Plaintiff's refusal to pay Karan attorney's fees. The Court finds these cases are related and relevant to the issue of what recovery Plaintiff's Counsel may be entitled to seek in this action.

1   While the Court may not take judicial notice of findings of fact from these documents, it must

2   take judicial notice of the existence and content of these three orders.  *See* Fed R. Evid. 201(c).

3   Thus, the Court takes judicial notice of these records to the extent permitted by law.

4   **BACKGROUND**

5   The facts of this case are well-known to the parties; thus the Court recites them only

6   briefly.  On July 22, 2022, the parties entered into a settlement agreement resolving Plaintiff's

7   Eighth Amendment deliberate medical indifference claim against Nurse Teran.  (See Doc. No.

8   84).  Under the settlement agreement, the California Department of Corrections and

9   Rehabilitation ("CDCR") agreed to pay $225,000.00 to Plaintiff.  (Doc. No. 100-1 at 4).  Based

10  on his prior dealings with CDCR and industry custom, Plaintiff's Counsel, Ken Karan, reasonably

11  believed the settlement check would be sent to him so that he could deduct his attorney's fees and

12  costs, resolve Plaintiff's liens, and send the remainder (if any) to Plaintiff.  (Doc. No. 99 at 10 ¶¶

13  18-20).  Pursuant to a Court order issued when the case was settled, Defendant's Counsel was to

14  "file a status report every twenty (20) days to advise the Court of the status of payment after the

15  request for payment is submitted."  (Doc. No. 84).  Under the terms of the settlement, signed on

16  November 2, 2022, CDCR was to make "a good faith effort" to complete payment within 180

17  days, thus the last day to perform the settlement agreement was May 1, 2023.  (*See* Doc. No. 100-

18  1 at 9 ¶ 22; Doc. No. 99 at 2).

19  Defendant's Counsel did not file any status reports.  *See* docket.  Plaintiff's Counsel, Ken

20  Karan, inquired via email multiple times as to the status of the check, including on February 1,

21  2023 and April 21, 2023, but Counsel for Defendant was unable to provide any detailed

22  information other than responding on April 22, 2023 that according to the Finance Office the

23  "check had been processed."  (Doc. No. 100-1 at 12, 16).  Finally, on May 5, 2023, Defense

24  counsel advised Mr. Karan that the check had been sent to an addressing corresponding to

25  Plaintiff's home address, and that it had been cashed in March 2023, two months prior.  (*Id*. at 18,

26  20).

27  On May 17, 2023, Plaintiff filed a Motion to Reopen Case and Enforce Settlement

28  Agreement (Doc. Nos. 99, 100), which the Court granted in part on July 12, 2024.  (Doc. No.

3

125). The Court found that the payment terms in the settlement agreement, which did not specify to whom the payment would be made or where payment would be sent, were silent or ambiguous; that based on the parol evidence submitted by the parties, the court interpreted the silent or ambiguous payment term as directing payment to Plaintiff's Counsel's trust account; and that the failure to do so was a breach of a material term of the settlement agreement. (*See generally id*). The Court also found that Plaintiff's Counsel was a third-party beneficiary under the settlement agreement who could sue to enforce its terms. (*Id*. at 9-10). Thus, the Court directed the parties to brief the issue of what damages, if any, should be awarded to Plaintiff's Counsel based on CDCR's breach.

### A. Plaintiff's Position[1]

Plaintiff's Counsel argues that CDCR should pay him as damages the full $225,000 that it mistakenly sent to Plaintiff, plus interest. In support, Karan submits a spreadsheet documenting his costs incurred in the litigation, including deposition fees, service of process, expert fees, records, postage, and travel. (Doc. No. 133-1). These costs total $25,835.41. (*Id*.). Counsel's 35% fee amount to $78,750. (*See id*. at 5). Karan also documents several liens, bail expenses, and loans that Plaintiff took out during the litigation, which Karan considers case expenses and which he claims the lienholders will look to him to satisfy. (*See* Doc. No 128 at 2-3; *see generally* Doc. Nos. 134-138).

Rather than demand the precise total of these costs and fees, Karan contends that CDCR should pay him the full $225,000, plus interest, because if CDCR had sent the settlement check to him consistent with its prior practice and accepted industry custom, Karan would have been able to pay his own costs and fees and resolve Plaintiff's debts. (Doc. No. 144 at 9). Applying an 10% annual interest rate to the $225,000 settlement, per Cal. Civil Code § 3289(b)[2] Karan seeks a total of $252,740. (Doc. No. 128-3 at 4).

/////

---

[1] Real parties in interest at this stage of the litigation are Plaintiff's Counsel, Ken Karan and CDCR, but the Court generally refers to the parties as "Plaintiff" and "Defendant" for simplicity.

[2] Cal. Civ. Code § 3289 prescribes that a 10% interest rate applies to any obligation owed under a breach of contract.

### B. Defendant's Position

Defendant denies that CDCR owes any further payment pursuant to the settlement agreement. CDCR points out that the settlement agreement explicitly makes each party responsible for its own costs and legal fees, as well as any liens. (Doc. No. 142 at 1; *see also* Doc. No. 100-1 at 4 ¶ 5, 8 ¶ 19). Defendant argues that Plaintiff would enjoy a windfall if he were able to abscond with the initial $225,000 check and then benefit from a further $225,000 that satisfied his existing debts. (*Id*. at 1-2). As to each of the categories of costs identified in Plaintiff's Motion, Defendant disputes that Plaintiff has a legitimate claim for recovery. As to Plaintiff's claim for attorney's fees and costs CDCR does not dispute that Karan's attorney's fees and costs are reasonable, but points out that "the parties' agreement (of which the court determined Karan is a third party beneficiary) provides that Vaughn, not CDCR, is responsible for his own attorney's fees and costs." (*Id*. at 7).

CDCR challenges many of the other categories of costs identified by Plaintiff as unrelated to the case, such as repaying the non-recourse loans that Plaintiff took out during the litigation, paying off Plaintiff's liens to Medi-Cal and the State of Iowa, and repaying Plaintiff's bail bond. (*See id*. at 3-7). Defendant argues that under the settlement agreement, Vaughn alone is responsible for paying these debts, and that "[t]here is no evidence that Karan or anyone other than Vaughn is responsible" for these debts. (*Id*. at 7). CDCR also argues that "the fact that [Vaughn] absconded with the funds is simply not foreseeable damages for mailing a check to a party who knows he owes debts. Since they are not foreseeable, they are not recoverable damages for breach of contract." (*Id*. at 8).

Finally, Defendant denies that Plaintiff is entitled to recover interest since no judgment was entered in this case and CDCR timely paid its $225,000 obligation under the settlement agreement. (*Id*. at 6).

### C. Plaintiff's Reply

In a reply, Karan argues that Defendant misrepresents the underlying nature of this claim, which is to vindicate his (Counsel's) rights under the settlement agreement and protect him from claims by Plaintiff's creditors, rather than to earn a windfall for Plaintiff as CDCR suggests.

5

1  (Doc. No. 144 at 1-2). As to each of the liens against Plaintiff, Karan asserts that the creditors

2  will seek recovery against him personally. (*See generally id*.). Moreover, he argues that whether

3  Plaintiff's debts are properly deemed "case-related expenses" is not, as CDCR claims, a

4  legitimate basis for relieving CDCR of its obligation to pay the specified damages, because all of

5  Plaintiff's liens would have been satisfied if not for CDCR's breach of the settlement agreement.

6  (*Id*. at 5-6). Further, Karan contends "[t]here should be no doubt that any expenses incurred on

7  Plaintiff's behalf by his attorney were incurred on the basis that those expenses would be

8  reimbursed from the recovery of damages in the lawsuit." (*Id*. at 6). Thus, he argues, "every cost

9  identified arises directly from counsel's representation of Plaintiff." (*Id*.).

10  Karan rejects CDCR's argument that no post-judgment interest should be awarded; in fact,

11  what he seeks now is pre-judgment interest given that he has had "to wait over 1.5 years to

12  recover from CDCR's malicious actions." (*Id*. at 4-5). And if CDCR fails to pay a judgment

13  issued by this Court, Karan promises to seek post-judgment interest as well. (*Id*. at 5).

**DISCUSSION**

**A.  Plaintiff's Counsel is Entitled to Monetary Damages as a Third-Party Beneficiary**

The Court already determined that CDCR is liable for breach of the settlement agreement. (*See* Doc. No. 125). The remaining question is what damages should be awarded to Karan for that breach. It is important to clarify that the real parties in interest at this stage of the litigation are not Plaintiff Vaughn and Defendant Teran, but Plaintiff's Counsel and Defendant's employer, the California Department of Corrections and Rehabilitation. Nor is the lawsuit brought by Plaintiff's creditors and lienholders against CDCR. Thus, the measure of damages is to be determined based on the benefit Karan expected to receive as a third-party beneficiary to the settlement agreement from CDCR's performance and the resulting loss he suffered from their breach, rather than any benefit expected by Plaintiff or his creditors.

Under both federal law and state law, the usual remedy for breach of a settlement agreement is monetary damages or specific performance. *See Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 558 n. 28 (1st Cir.), *cert. denied*, 522 U.S. 913 (1997); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir.1986). The usual remedy for breach of

6

contract is monetary damages. *See United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 2460, 135 L.Ed.2d 964 (1996) ("damages are always the default remedy for breach of contract").

Under Cal. Civ. Code § 3300:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

In other words, the damages should be in an amount sufficient to remedy the harm to the aggrieved party—here, Plaintiff's counsel—caused by the breach.

While Article III of the Uniform Commercial Code does not govern settlement agreements, it addresses situations similar to this one, involving mishandled payment instruments and thus may serve as a source of persuasive authority. *See, e.g., Old Stone Bank v. Tycon I Bldg. Ltd. P'ship*, 946 F.2d 271, 273 (4th Cir. 1991) ("While the UCC does not of course govern the outcome of this suit involving real property, both sides agree that it provides persuasive authority in these circumstances"). With respect to forgery or theft of checks, Article III provides that where a payor fails to take ordinary care in issuing a check:

> and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

UCC 3-404.

In this case, as discussed further below, CDCR failed to exercise ordinary care by issuing a $225,000.00 check to a convicted felon rather than to his retained attorney, who CDCR knew had incurred substantial time and costs in litigating the case. Thus, the Court finds that Karan is entitled to monetary damages sufficient to remedy the loss resulting from CDCR's breach of contract and lack of ordinary care.

1. The Damages Were a Foreseeable Result of CDCR's Breach

Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515, 869 P.2d 454, 460 (1994)

7

1  (collecting cases).  Here, CDCR argues that "the fact that [Vaughn] absconded with the funds is
2  simply not foreseeable damages for mailing a check to a party who knows he owes debts.  Since
3  they are not foreseeable, they are not recoverable damages for breach of contract."  (Doc. No. 142
4  at 8).  Respectfully, the Court disagrees.  Mailing a settlement check in a personal injury action to
5  a represented client rather than to his attorney is contrary to general industry practice,[3] and even
6  more so defies common sense when the plaintiff is a recently released prisoner with a criminal
7  record for theft and the check is for a significant sum of money, here $225,000.  The Court takes
8  judicial notice of the fact that Plaintiff Vaughn is a felon with multiple convictions for vehicle
9  theft and a conviction for receiving stolen property.  *See People v. Mark Aaron Vaughn*, 2017 WL
10  1293460, at *6 (Cal. 2017).[4]  For Defense counsel and the Comptroller's Office staff[5] who issued
11  the check to have ignored this fact, along with well-established industry custom, when they
12  elected to send $225,000 directly to Vaughn rather than to his attorney exposed them to liability
13  for the consequences.  This is particularly confounding given that the settlement agreement
14  explicitly directed both Plaintiff and his Counsel to complete payee data forms and provide their
15  addresses of record, (*see* Doc. No. 100-1 at 4 ¶ 4) providing CDCR the information necessary to
16  send payment to Karan.  As the Court discussed at length in its July 12, 2024 Order, the relevant
17  parol evidence supports the inference that the parties expected CDCR to mail the check to Karan
18  and breached that agreement by mailing it instead directly to Vaughn.  In doing so, it was
19  reasonably foreseeable that Karan would not receive the benefit he expected from the settlement
20  agreement.
21    ////
22    ////

---

[3] The Court noted in its July 12, 2024 Order Granting in Part the Motion to Enforce the Settlement Agreement, the American Bar Association has explicitly stated that, "[i]n payment of liability claims, it is the customary practice of insurance carriers to deliver the settlement proceeds to the lawyer of record for the claimant, usually by check made payable jointly to the claimant and the claimant's lawyer.  As the Supreme Court of New Jersey observed in *Matter of Conroy*, 56 N.J. 279, 266 A.2d 279 (1970), the underlying purpose for the practice is to 'protect and preserve the interests of all three parties to the transaction' the insured, the successful claimant and the claimant's lawyer."
[4] *See* Fed. R. Evid. 201.
[5] At a December 7, 2023 Telephonic Status Conference, former Counsel for Defendant, Matthew Roman, advised the Court that the Comptroller's Office issued the check.

    2. <u>Karan is Entitled to Recover His Attorney's Fees and Costs Incurred in This Case</u>

Karan incurred significant time and expense in litigating this prisoner civil rights case on a contingency basis. He settled the case after more than five years and did so on the eve of trial, after he had hired multiple experts and incurred nearly $25,000 in costs. (*See* Doc. No. 133-1 at 4-5). CDCR does not dispute the reasonableness of Karan's 35% fee ($78,750), or the litigation costs documented in his damages briefing ($25,835.41). (Doc. No. 142 at 7).

The Court finds it appropriate to make Karan whole for the contingency fee he expected to receive from the settlement and the basic litigation costs he covered out-of-pocket, such as records, depositions, expert fees, and the like. This was the benefit Karan reasonably expected to receive from CDCR's performance of the settlement agreement. Based on upon a review of the costs identified in the spreadsheet submitted by Karan, whose reasonableness CDCR does not challenge, the Court finds that both the fees and costs are reasonable and that CDCR is liable for $104,135.41.

**B. Karan Is Not Entitled to Recovery Based on Vaughn's Personal Debts**

The Court does not, however, find that contract principles warrant assigning damages against CDCR for the additional settlement funds in this case. Karan was not a third-party beneficiary to the contract beyond the amount of his fees and costs, and thus cannot claim an interest in the amount that would have gone to Plaintiff or to Plaintiff's lienholders.

Nor would the Court find such damages appropriate even if Karan had made himself personally liable for Plaintiff's debts. But the Court need not address that question in detail because it finds no evidence of such liability. While the evidence submitted supports the notion that the lenders are "looking to Plaintiff's counsel" to satisfy Plaintiff's liens, as Karan asserts, this is not equivalent to those lenders and lienholders having a legal claim against Plaintiff's counsel personally. With respect to some of Plaintiff's debts, the evidence submitted explicitly refutes any such obligation on Karan's part. For example, the "attorney acknowledgment" that Karan signed with one of Plaintiff's lenders, the Legal Lending Group, specifies, "I [Karan] will honor my client's irrevocable letter of direction and assignment, **subordinate to attorney's fees, costs and appropriate medical liens** as instructed above." (Doc. No. 137 at 13) (emphasis

9

added). This is echoed by the Irrevocable Letter of Direction signed by Plaintiff Vaughn, in which he agrees to:

> irrevocably direct Ken Karan or any subsequent attorney(s) . . . to tender the Legal Funding Group (Tennessee), LLC Ownership Amount to The Legal Funding Group (Tennessee) LLC pursuant to this assignment from any and all proceeds due to me from the legal claim(s)/case(s) in which you represent me, **after payment of any and all legal fees and reimbursable legal costs** before releasing any funds to me.

(*Id*. at 4) (emphasis added). In other words, the agreement and acknowledgment specify that Karan is only obligated to distribute funds to the lender after first satisfying his own attorney's fees and costs. Indeed, the lender may not have anticipated such an eventuality in the situation where the funds received by Karan are only sufficient to pay his attorney's fees and costs and no more, under the terms of the agreement no recovery is available to the lender. The Court finds no evidence that Karan is under an obligation to pay the lender funds that he never received.[6]

Similarly, for several of Plaintiff's other loans, liens and his bail bond, Karan was a co-signatory certifying that Plaintiff understood his legal obligations under the applicable agreement or that Karan would pay the third party from the proceeds of the lawsuit, if any, *before disbursing money to Plaintiff*. However, the Court does not find in any of these documents, or in Karan's briefing, any evidence that Karan will be held personally liable for the breach of the settlement agreement. Nor would such claims be justified based on the facts or the law. To the extent any of these parties seek recovery of proceeds they expected to receive from the settlement, they must pursue those claims against Vaughn himself, and potentially against CDCR if they believe they have a valid basis for doing so.

////

////

---

[6] As to Plaintiff's other lender, Harmony Asset Holdings LLC, the agreement specifies that "[i]nstead of suing in court, Purchaser and Seller agree to arbitrate all disputes, claims or controversies on an individual, non-representative basis" and Karan signed an acknowledgement that claims against Plaintiff would be resolved via arbitration. (Doc. No. 138 at 3-4). The documents do not support any inference that Harmony can pursue legal action against Karan resulting from another party's breach of the settlement agreement under an indemnity theory.

**C. Karan Is Entitled to Recover Pre-Judgment Interest**

California Civil Code section 3289 "provides rules for prejudgment interest rates applicable to breaches of contract. If the contract specifies a legal rate of interest, a court will apply that rate 'after a breach [of contract] until the contract is superseded by a verdict or other new obligation.' (Civ. Code, § 3289, subd. (a).) If a contract does not stipulate a legal rate of interest, a 10 percent per annum interest rate applies in the event of a breach. (*Id*., subd. (b).)" *Soleimany v. Narimanzadeh*, 78 Cal. App. 5th 915, 923 (2022); *see also Estrada v. Royalty Carpet Mills, Inc*., 76 Cal. App. 5th 685, 727–28 (2022), aff'd, 15 Cal. 5th 582 (2024)  (noting that "[t]he primary purpose of an award of prejudgment interest is to compensate the plaintiff for the loss of use of money during the period before the entry of judgment, in order to make the plaintiff whole . . ." quoting *Bullock v. Philip Morris USA, Inc*. 198 Cal.App.4th 543, 573 (2011).

Here, the Court has found that CDCR was liable for the $104,135.41 in benefit that Karan expected to receive as a third-party beneficiary. Due to CDCR's breach of the settlement agreement, Karan has to date been delayed 17 months in obtaining the funds that he would have otherwise received. Defendant argues that Karan is not entitled to post-judgment interest because no judgment has been entered in Karan's favor. (Doc. No. 142 at 6). Further, CDCR contends that because Plaintiff undisputably received the $225,000 check in February 2023, CDCR has substantially performed under the settlement agreement and any claim for post-judgment interest is moot. (*Id*.).

CDCR's arguments are misplaced. The Court determined that CDCR breached the settlement agreement, rather than substantially performing. (*See generally* Doc. No. 125). And while post-judgment interest is premature at this stage, the Court may appropriately award pre-judgment interest given the extensive delay in Karan receiving the benefit of the settlement agreement due to CDCR's breach. *See Estrada,* 76 Cal. App. 5th at 727-28; *see also Schudel v. Searchguy.com, Inc*., 2010 WL 11508655, at *3 (S.D. Cal. Aug. 9, 2010) (awarding pre-judgment interest based on breach of contract).

As illustrated by the calculations in Figure 1, the Court awards pre-judgment interest based on a commencement date of May 3, 2023, the latest date CDCR was due to perform under

the settlement agreement, (*see* Doc. No. 100-1 at 9 ¶ 22), and the end date of November 29, 2024, 30 days from the date of this Order.  If CDCR completes payment before November 29, 2024, it may reduce the interest payment accordingly.

Figure 1 – Pre-Judgment Interest Calculation[7]



### D.  Karan's State Court Proceedings Do Not Demonstrate Bad Faith

CDCR references Karan's state court actions against Vaughn and CDCR, which are the subject of CDCR's Request for Judicial Notice, to suggest that Karan is improperly engaging in "serial litigation" to obtain the same relief multiple times.  (*See* Doc. No. 142 at 7-8).  CDCR provides no legal authority to suggest that doing so was improper.  Nor does the Court find Karan's actions to be *ipso facto* evidence of bad faith, particularly given the unusual procedural posture of his claim and the possibility that he may only be able to obtain complete relief in state court.  To the extent CDCR believes it is entitled to partial or complete dismissal of the state court action based on the ruling in this action, it may file an appropriate motion in that forum.

Accordingly, it is **ORDERED**:

1. The Court **GRANTS** Defendant's Request for Judicial Notice (Doc. No. 143).

2. The Court **GRANTS IN PART** Plaintiff's Motion for Damages (Doc. No. 128-3) to the extent the Court awards $104,135.41 in breach of contract damages, plus 10% pre-judgment interest of $16, 433.40 on these contract damages for a total of $120,568.81.

---

[7] *See* https://ijcalc.sdcourt.ca.gov/Default.aspx (last visited: October 28, 2024).

3. The California Department of Corrections and Rehabilitation is ordered to pay the damages specified in this order to Attorney Karan within 30 days of the date on this Order. Should payment be made before 30 days, the California Department of Corrections and Rehabilitation may reduce the 10% pre-judgment interest accordingly.

4. The Clerk of Court shall CLOSE this case.

Dated:   October 28, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE